### SIMON H. GREENE *vs.* CALEB F. HARRIS & another.

G. filed a bill in equity against H. to redeem a mortgage and obtain an alleged balance of account due. The bill alleged, as finally amended, a contract between G. and H. that G. should print and H. sell certain calicoes, H. to allow ⅛ of a cent. per yard over the price paid by S. & S. to one Sanders for similar work, and that H. subsequently, and when knowing what the Sanders prices were, reduced his prices to less than the agreed excess, but assuring G. that they were still ⅛ of a cent per yard in excess of the Sanders prices. The bill alleged that G. had exchanged accounts with H. in reliance on these incorrect statements, and prayed for a correction of accounts and for an account to be taken, and that H. be decreed to cancel the mortgage. *Held*, on demurrer to the bill, that the complainant's claim being to have certain prices allowed him, it was not in the nature of unliquidated damages, and could be set off, inasmuch as those prices were capable of being ascertained.

*Held, further,* that the bill was not multifarious, inasmuch as all the alleged matters related to the same transaction and the same parties, were different modes of stating the complainant's grounds of relief, and could well be investigated at the same time.

Greene *v.* Harris.

*Held, further,* that the question being at what price work was done, and the object of the bill to rectify errors in a running account, and to settle the amount due on a mortgage, the question was not affected by the statute of limitations.

BILL IN EQUITY to redeem a mortgage, and to secure a balance of account claimed to be due the complainant. The former proceedings in the case are reported in Vol. IX. R. I. Reports, at page 401. The facts of the case, and all the proceedings from the time the opinion there reported was rendered down to the present hearing, which was had upon the respondents' demurrer to the complainant's ·amended bill, are stated in the opinion of the court.

*T. A. Jenckes & James Tillinghast,* for the respondent Harris, in support of the demurrer, made the following points and submitted the following authorities: I. That the bill does not state a case of fraudulent misrepresentation or concealment upon which any relief can be granted by a court of equity. 1st. In order that a misrepresentation may support an action at law, or be of any avail whatever as a ground of relief in equity, it is essential that it should be material in its nature, and be a determining ground of the transaction. *Merriwether* v. *Shaw,* 2 Cox, 134; *De Manneville* v. *Crompton,* 1 V. & B. 354; *Jameson* v. *Stein,* 21 Beav. 9; *Robson* v. *Earl of Devon,* 4 Jur. N. S. 245, 248; *Goldicutt* v. *Townsend,* 28 Beav. 445; *Jennings* v. *Broughton,* 5 De G., M. & G. 136; *Denne* v. *Light,* 8 De G., M. & G. 774; *Smith* v. *Richards,* 13 Pet. 26; *Coffee* v. *Newsom,* 2 Kelly, 442; *McDonald* v. *Trafton,* 15 Maine, 225; *Cunningham* v. *Smith,* 10 Gratt. 255; *Gillett* v. *Phelps,* 12 Wis. 392; *Taylor* v. *Fleet,* 1 Barb. 479; *Pulsford* v. *Richards,* 17 Beav. 87; *Morris Canal Company* v. *Emmett,* 9 Paige, 168; *Winston* v. *Swathmey,* 8 B. Mon. 19; *Hall* v. *Thompson,* 1 Sm. & M. Ch. 443; *Daniel* v. *Mitchell,* 1 Story, 172; *Hagan* v. *Irvin,* 18 Pick. 95; *Bradley* v. *Borley,* 1 Barb. 125; *Hough* v. *Richardson,* 3 Story, 690; *Hallows* v. *Fernie,* Law Rep. 3 Eq. 520; *Price* v. *Macauley,* 2 De G., M. & G. 344; *Barry* v. *Crossley,* 2 J. & H. 1; *New Brunswick, &c. Railway Co.* v. *Conybeare,* 9 H. L. Cas. 711; *Barrett's Case,* 3 De G. & S. 30; *Barnes* v. *Pennell,* 2 H. L. Cas. 497, 531; *Nicoll's Case,* 3 D. & G. 387, 439; *Atwood* v. *Small et al.* 6 Cl. & F. 232; *Slaughter's Administrator* v. *Gerson,* 13 Wal. 379.

2. That the representations in the case having been made by

the buyer, not by the seller, the case was materially different from those where the misrepresentation is made by the vendor as to the properties or qualities of the article he is offering for sale, and the rule was that in the case of a purchaser, as stated in Kerr on Fraud, p. 77, that " if the means of investigation and verification be at hand, and the attention of the party receiving the representation be drawn to them, the circumstances of the case may be such as to make it incumbent on a court of justice to impute to him a knowledge of the result, which, upon due inquiry, he ought to have obtained, and thus the notion of reliance on the representation made to him may be excluded." *Lowndes* v. *Lane*, 2 Cox, 363 ; *Jennings* v. *Broughton*, 17 Beav. 234; affirmed 5 De G., M. & G. 126 ; *Farebrother* v. *Gibson*, 1 D. & G. 602 ; *Clarke* v. *MacIntosh*, 4 Giff. 143 ; *New Brunswick Railway Co.* v. *Conybeare*, 9 H. L. Cas. 711 ; *Hough* v. *Richardson*, 3 Story, 691 ; *Daggett* v. *Emerson*, Ib. 733 ; *Mason* v. *Crosby*, 1 Wood & M. 342 ; *Johnson* v. *Taber*, 6 Seld. 319 ; *Gordon* v. *Parmelee*, 2 Allen, 214.

A purchaser is bound to exercise ordinary prudence and discretion, and if the means of knowledge are within his power, and he neglects to make the proper inquiry, he loses his remedy against the vendor for any fraudulent representation the latter may make. *Bell* v. *Byerson*, 11 Iowa, 233 ; *Schermerhorn* v. *George*, 13 Abb. Pr. 315 ; *White* v. *Seaver*, 25 Barb. 235 ; *Burton* v. *Willers*, 6 Litt. 32.

3. That representations concerning the price of an article, although false, do not furnish ground for an action at law, or for relief in equity. " *Emptor emit quam minimo potest ; venditor vendit quam maximo potest.*" The rule of the civil law left the contracting parties free to say what they pleased concerning the consideration of the contract. Pandects, Pothier's ed. 1818, vol. 1, 556, lib. xviii. tit. v. § xvii.; Cod. lib. iv. tit. xliv. § 10. The rule of the common law, so far as it affects the remedies of a purchaser, admits of some limitations and exceptions, but so far as affects the remedies of a vendor is substantially the same. Kerr on Fraud, 84, 87 ; *Medbury* v. *Watson*, 6 Met. 246 ; *Gordon* v. *Parmelee*, 8 Allen, 334 ; *Manning* v. *Albee*, 11 Allen, 522 ; Story's Eq. Juris. § 200.

4. That inadequacy of consideration was no ground for setting

aside, avoiding, or reforming an executed contract. 1 Sugden on Vendors & Purchasers, 312, chap. vi. § 1, art. 18; *White* v. *Seaver*, 25 Barb. 235. 5. That even if false, the representation is not of the class which the party making it is required to make good, either at law or in equity. *Ex parte Briggs*, Law Rep. 1 Eq. 483; *Pulsford* v. *Richards*, 17 Beav. 87; *Hough* v. *Richardson*, 3 Story, 691; *Jennings* v. *Broughton*, 17 Beav. 234; affirmed 5 De G., M. & G. 126; *Smith* v. *Ray*, 7 H. L. Cas. 750.

II. That the relief asked for is of a kind that is not possible to be granted.

III. That the statute of limitations is a complete bar to any relief on this bill; referring to the cases cited at the former hearing. See 9 R. I. 403.

IV. That the amendment adds another element of multifariousness to the bill. Story's Eq. Pl. §§ 240, 530.

V. That the fact that the accounts were stated and exchanged is a complete bar to any relief on this bill.

*Bradley & Metcalf*, for the complainant, *contra*, made the following points, and submitted the following authorities: I. That the correction of errors in accounts for mistake or fraud is a well settled branch of equity jurisdiction. 1 Story's Eq. Juris. 523; Bridgman's Eq. Dig. Pl. & Prac. pp. 4, 5; *Greene* v. *Harris*, 9 R. I. 401.

II. That the bill and amendments allege such errors, and ask their correction specifically.

III. That it charges confidential relations between the parties, and misrepresentation, as the basis and cause of certain agreements and accounts, and further charges that such agreements were in violation of previous arrangements, and unconscionable in themselves; thus bringing the cause under each of the three heads, either of which constitute fraud between parties to the suit, according to the rules of courts of equity, as laid down by Lord Hardwicke in *Chesterfield* v. *Janssen*, 2 Vesey, 125.

IV. That such relief is afforded whenever undue influence has existed and advantage been taken of it; 3 Lead. Cas. in Equity, 497; *Dent* v. *Bennett*, 4 Myl. & C. 277; *Whelan* v. *Whelan*, 3 Cow. 537; *Taylor* v. *Taylor*, 8 How. 183; and fraud or imposition is not necessary to relief. *Slocum* v. *Marshall*, 2 Wash. C. C. 401; 3 Lead. Cas. in Eq. 134, 135, 138, 139.

V. That the bill is not multifarious in charging *quasi* partnership relations and special errors also as grounds of relief. *Arnold* v. *Arnold*, 9 R. I. 397.

POTTER, J. The complainant, by a bill filed August 29, 1868, claims to redeem a mortgage given in 1855, to secure a promissory note, and also to secure a future balance of account, and in order to ascertain the amount due he claims to have certain accounts corrected by allowing prices for work differing from and exceeding the prices formerly charged, and that an account be taken, &c.

The complainant says that he and the respondent Harris had been engaged from 1841 to 1863 in the closest business relations in the printing business (the complainant printing and the respondent selling), a part of the time on joint account, and a part of the time at prices fixed by said Harris, the complainant reposing special confidence in said Harris; that a new arrangement was made in 1854, to print for Harris at prices to be fixed by him (subject to revision at request of either party), to continue as long as mutually satisfied, and on a guaranty of certain amounts from said Harris; and the complainant claims that he was assured by said Harris that the business should be conducted for their mutual benefit, and that if he, Harris, succeeded in making money, he, Greene, should make money also.

And the complainant claims that on the 1st of June, 1859, Harris agreed that the prices thereafter to be allowed by him should be one eighth of a cent per yard over and above the prices and compensation paid by Slater & Sons to James Sanders, Greene's neighbor, for similar work; and named certain prices as those prices, and that in July, 1859, and July, 1860, Harris reduced said prices, on the ground that otherwise the goods could not be sold at a profit to himself, but on the continued understanding that the prices so reduced were still one eighth more than Sanders's prices.

The complainant relied on said assurances, and believed the statements of Harris to be true, and acted on them as true, and was deceived thereby; but that the prices so named were not as agreed, and he did not discover it until about December, 1863, when he learned the facts in a conversation with said Sanders in the cars.

And the complainant also alleged in his original bill, that he had been recently informed by Harris, that at the time said contracts were made and prices fixed, said Harris did know what the said Sanders prices and compensation were.

Said Greene further alleges that said Harris was accustomed, during their business relations aforesaid, to fix the prices for printing, and that he exercised the right to fix the prices as aforesaid, January and July, 1859, and July, 1860, on the ground and allegation that it was necessary thus to reduce and fix the prices, because otherwise the goods could not be sold at a profit to himself.

And the complainant, on the ground of the assurances and agreements of said Harris, claims to be allowed a reasonable share of the profits of the business, without specifying any limit as to time, and he claims that corrections of accounts be allowed him to the amount of $128,438.82, and for an account to be taken, and that said Harris be decreed to discharge and cancel the mortgage and pay any balance due, and that said Greene be allowed to redeem on paying any balance due, and for an injunction against selling the property on said mortgage, and for general relief.

Although the answers are not now in question on this demurrer, yet as they make a part of the history of the case, they may aid in some measure in coming to an understanding of the plaintiff's original and amended bills.

'The defendant, H. L. Greene, answers substantially, admitting the statements in the bill, and stating that he, H. L. G., was interested one eighth in said business from 1848 to 1863; that before 1859 said Harris and Simon & H. L. Greene were partners; and that after 1859, they were jointly interested in said business; that he for himself and his father Simon, the complainant, made a contract with said Harris, in January, 1859, to print for said Harris, at one eighth of a cent above the said Sanders prices, said Harris stating at the time that he knew the prices, and naming certain prices as those prices, and that said prices were in July, 1859, and July, 1860, again fixed by said Harris, on the express understanding that they were one eighth higher than said Sanders's prices and compensation.

Said Harris answers, admitting a partnership in said business

down to March, 1854, when he claims it was dissolved and the accounts settled ; and denies that there has been since that time any partnership or joint interest, or any agreement or understanding, express or implied, for any joint interest, or that said Greene was in any way interested in the profits.

But that the business was thenceforward divided, and said Greene did the printing of the goods at fixed prices and agreed upon between them, and entirely denies the alleged agreement as to the Sanders prices, or anything from which such an agreement could be inferred.

And the defendant Harris, in his answer, alleged by way of plea : —

1. That detailed and stated accounts were from time to time mutually rendered and exchanged between the parties by which a certain balance, $104,307.71, over and above the mortgage note, was found to be due said Harris on the 31st of December, 1867, interest being from time to time regularly carried into the said account.

2. That the alleged contract was not to be performed in a year, and therefore void.

3. That all the causes of action accrued more than six years before the filing of the bill.

4. Claiming the benefit of the statute of limitations as to any claims accruing more than six years before said bill was filed.

All which pleas, when heard before a single judge, were *pro forma* overruled, and an appeal being taken, were heard before the full court.

And on the 31st day of December, 1870, a decree was entered : —

1. Overruling said plea of the statute of frauds.

2. Overruling the defendant Harris's plea of the statute of limitations to the whole suit, without prejudice to his right to insist upon it in his answer.

3. Reserving the plea as to items of account over six years, to the hearing.

4. And allowing the plea of stated accounts, with leave to plaintiff to reply or amend.[1]

The complainant, April 15, 1871, filed an amendment to his

[1] See 9 R. I. 401.

bill. After repeating with some enlargement the transactions previous to 1859, with the assurances from Harris, &c., it again alleges the understanding that while Harris was to fix the prices, it was on the condition that if unsatisfactory, or either made a loss, &c., they were to be subject to revision or allowance, so as to give the dissatisfied party a fair share of the profits of the whole business; and then states that said deficiency of profits on the part of said Greene was made up several times by guaranties which were continued down to April 1, 1857, and after that time the complainant continued to print without any special guaranty but under the old agreement, the years 1857 and 1858 not being years of much profit in their business. This, of course, disposes of the question of profits down to 1859.

And the complainant says that he reposed special trust and confidence in said Harris during said business, and allowed him on and after January, 1859, to fix said prices in reliance on his said assurances and the agreements hereafter referred to; and that said Harris stated that the prices *named* by him in January, 1859, July, 1859, and July, 1860, *were and should* be one eighth more than the Sanders prices aforesaid, because the work was more costly than the Sanders work; and that the prices fixed and reduced by him at the three periods named were necessary to enable said Harris to make any profit from the business; and that said Greene believed said statements to be true, and acted on them as true, and was deceived thereby, and exchanged accounts on that supposition; and that the accounts made up and exchanged were not intended by him as final statements of accounts, but were statements intended to show the condition of the business upon the prices named and subject to revision as the business might turn out; and claims that the accounts were erroneous and should be corrected to conform to the agreement according to his exhibit F, and reasonably to divide the profits made by said Harris after January, 1859, between them; the complainant claiming one half as his, Greene's, reasonable share thereof.

Certain claims are also made in the original and amended bills in relation to goods withdrawn from printing, and in relation to the business connection between said Greene and his son Henry, and as to the reasons why said Greene did not for himself inquire as to the Sanders prices, not necessary to be fully stated at pres-

To the bill as amended, the defendant Harris demurred, and on argument the court sustained the demurrer on one point only, to wit, that if the bill proceeded on the ground of fraud or misrepresentations, Harris's knowledge of said Sanders's prices was not sufficiently alleged.

The complainant then amended his bill, stating that "at the time when he, Harris, so fixed said prices, the defendant Harris knew what were the prices and compensation thus received by J. Sanders for printing similar styles of goods for S. Slater & Sons."

And to this bill, so amended, the defendant Harris again demurs, pleads, and answers, and has reiterated, and the parties have reargued the ground of demurrer taken before.

1st. That the bill is multifarious, and for divers and distinct matters and causes which cannot properly be joined in the same bill. This, it is alleged, consists in claiming to be allowed certain prices for his work, and also claiming a share of the profit as in a partnership, to which the second amendment has added a new element, viz., false representations.

2d. That the suit was not commenced within six years from said contract and alleged misrepresentations; and that the last amendment was not made within six years from the alleged discovery of said misrepresentations.

3d. That complainant has not made such a case as entitles him to relief.

Now, in order to decide these points, we must try to ascertain what the bill means, and on what ground it proceeds. Does it proceed on the ground of contract, or of contract and mistake conjoined; or on the ground of false and fraudulent misrepresentations? To entitle the complainant to relief on the sole ground of mistake, it must be shown to be a mutual mistake. And when the complainant does not know whether his proof will support a case of mistake or fraud, he may in some cases allege it in such a manner as to be entitled to relief according to the case he makes on trial.

In the present case, defence on the ground of mutual mistake is shut out by the allegation of Harris's knowledge, which is asserted, not as a matter which the complainant may or may not be able to prove, but as founded on a statement made to the complainant himself, and about which he therefore cannot be mistaken. It is positively alleged.

Does the bill then allege a case of contract? because if it does, it is admitted by the defendant that the alleged misrepresentations would be immaterial. The defendant seems to admit that the bill and first amendment proceeded on the allegation of a new contract made by the parties in January, 1859. But he contends that by the second amendment, he has abandoned the ground of contract, and adopted that of false representations.

We do not so consider it. We understand the plaintiff's claim to be, that on the 1st of January, 1859, the parties having previously had a contract for similar work on certain terms, said Harris (as stated in the original bill) *agreed* that the prices thereafter to be allowed should be one eighth of a cent above the Sanders prices and compensation, and named certain prices as those prices; and as alleged in the amended bill, that the said Harris stated that the prices then named by him *were and should be* one eighth more, &c., and so in relation to the two subsequent times named; and that said Greene did not know, but said Harris did know what said prices were; and that said Greene, relying on said Harris, rendered the accounts to said Harris, on the basis of the prices so named, as being one eighth above the Sanders prices. Whether the other terms of the contract continued the same as before or not, is not material now. So that the allegation substantially is that said Harris contracted to pay certain prices, but that said Greene by mistake, into which he was led by said Harris, rendered the accounts on a different basis, and that while said Harris fixed and reduced the prices as named, Greene proceeded to work upon this understanding. And the complainant also claims that he should be allowed a reasonable proportion, viz., one half of the profits made by said Harris after January, 1859, and that an account be taken thereof.

Now there is language used by the complainant about Harris claiming a right to fix the prices, and being allowed by complainant to fix the prices (and this, too, in relation to the agreement of January, 1859), which might seem inconsistent with the alleged contract; but it is not claimed or admitted that Greene was to print for Harris, unless he chose to do so; and it is claimed, and was in fact agreed, in 1854, that if the prices did not afford Greene a profit equal to a certain rent, Harris guaranteed to make up that rent to Greene; and it was further provided that

Greene v. Harris.

that agreement was to continue as long as the parties were mutually satisfied. We cannot, therefore, understand this allegation in any other sense than that Harris named certain prices, and that Greene, if he continued to work, was to work for those prices.

The allegation that Harris named reduced prices because he himself could not otherwise make a profit, may also seem inconsistent with the alleged contract, but not necessarily so. Greene might well suppose that if a neighbor, a shrewd manufacturer, could live upon such prices, he could also ; and that it would be better than to let his mill and machinery suffer, as it would from standing still. And he alleges in several places that this reduction was made on the understanding that the reduced prices were still one eighth more than Sanders was receiving. We think, therefore, that the bill proceeds on the ground of contract ; and if the bill sufficiently alleges a contract to pay certain prices which another manufacturer was receiving, any subsequent representation by Harris as to what those prices were, would not affect the contract.

It is contended that no new contract, January, 1859, is sufficiently set forth, and that each element of the new contract should be stated. The bill does state previous agreements and working for Harris at certain styles of goods for certain prices before and up to January, 1859 ; and then alleges that Harris then agreed to pay certain prices thereafter. It might well be implied that the old agreement would continue, except so far as then changed.

It was argued by the defendant that the complainant's claim is in the nature of a set-off, but that it is for unliquidated damages, and cannot be set off. Is it so ? It is not a claim to be allowed damages for any injury done or loss sustained, but to have certain prices allowed him. Although those prices may depend upon a variety of matters, still they are capable of being ascertained. As to the claim for a share of the profits made by Harris, we do not consider that any agreement for any portion of the profits, definite or indefinite, is stated with any distinctness, so that it could be enforced by a court of equity. As to the question of multifariousness, all the alleged matters relate to the same transactions and the same parties, and can well be investi-

gated at the same time.   They are different modes of stating the complainant's grounds of relief.  As to the statute of limitations, if this was an independent contract, and Greene was suing for his pay, the statute might be a bar, unless the plaintiff brought himself within the exceptions to its operation.   But here the question is at what price the work was done, and the object is to rectify errors in a running account, and to settle the amount due on a mortgage, and we do not see that the statute of limitations affects the question.

We have now stated what, after four years' discussion, we consider to be the result and meaning of a very long and intricate bill ; and on this understanding, to which the complainant will be hereafter strictly held, we overrule the demurrer.   We have had many doubts as to the proper course to pursue, but we consider this most likely to speed the cause to a final hearing.

Subsequently, on further consideration, a decree was entered July 15, 1873, the essential parts of which were as follows : —

" *The said demurrer, as to so much and such parts of said bill as seeks an account of, or seeks relief, or to charge the said defendant Harris, in respect of the profits made by him in his business and dealings in print cloths and printed goods, or by virtue of any alleged joint interest of the complainant therein, is sustained.   And said demurrer, as to all other parts of said bill which are demurred to, is overruled.*"