1820.

ALLEN
v.
RANDOLPH.

Decree accordingly.(*a*)

(*a*) Vide *Brinkerhoff* v. *Brown, ante,* 671. and *Williams* v. *Brown, ante,* 682.

---

## R. K. ALLEN and THORP *against* RANDOLPH and others.

A *plea* must be perfect in itself, so that if true in fact, it will put an end to the cause.

If circumstances of fraud are charged in the bill, they must be denied by a general averment, at least.

Where the bill charged misrepresentation, coercion, and fraud, in procuring a release of a debt, and the defendant put in a plea and answer; and in his plea, insisted on the release in bar, without noticing the allegation of fraud, though in the *answer* it was fully answered and denied, the plea was held bad.

Where *A.* assigned and made over to *S.* a debt and demand against *R.*, and the proceeds of goods delivered by *A.* to *R.* to sell on account: *Held,* that all the right and interest of *A.*, as the creditor of *R.*, passed by the assignment, and that a release of all demands in law and equity by *S.* to *R.*, as assignee, given on a compromise with him, was valid and effectual.

THE bill stated, among other things, that the plaintiff and *D. K. Allen,* were partners in trade, under the firm of *R. & D. K. Allen,* and became insolvent on the 16th of *April,* 1818. That *D. K. A.,* being arrested and imprisoned, applied for his discharge under the 9th section of the insolvent act, and having assigned his estate to the plaintiff, *Thorp,* according to the act, was, on the 16th of *December,* 1818, discharged from his debts. That before their failure, *R. & D. K. Allen,* delivered to the defendants, *Randolph &*

*Dec. 28th.*

*Savage,* various parcels of goods, at various times, to be shipped to different places, and sold for their account, all of which were particularly stated in the bill, and amounting to above 30,000 dollars; and the bill charged, that the defendants, *R. & S.,* had never accounted for the proceeds of the goods or moneys received by them, to *R. & D. K. A.,* before the assignment and discharge of *D. K. A.,* nor to the plaintiffs, *A.* and *T.,* since. That before their failure, *R. & D. K. A.,* being indebted to the defendant *S.,* by bond, for 9,964 dollars, and to *D. A.* for moneys lent to them, the said *D. A.* being also responsible for a demand of one *F. A. T.* against them, for 10,000 dollars, they, on the 13th of *May,* 1818, assigned to the defendant, *Skidmore,* among other things, the debt or demand of the said *R. & D. K. A.* against the defendants, *Randolph & Savage,* and the proceeds of the goods so delivered to them as aforesaid, in trust to recover and collect the same, and by means thereof, to pay the moneys due to him, the said *Skidmore,* and to *David A.,* &c. and to indemnify *David A.,* &c. and to pay the residue or surplus to *R. & D. K. A.,* their executors, administrators or assigns.

The bill stated, that *Randolph & Savage* refused to account to *Skidmore,* and being pressed by him for payment, offered to pay 2,000 dollars on account of the demand, and give their notes for 2,000 dollars more, if *S.* would discharge them; and that if *S.* would not accept that offer, they would not pay any thing. That *Skidmore,* apprehensive of the insolvency of *R. & S.,* thought it prudent to accept the offer; and on the 7th of *April,* 1819, *R. & S,* accordingly, paid the 2,000 dollars, and gave three notes, payable in 30, 60, and 90 days, for the other 2,000 dollars. The first and second notes were paid, but *R. & S.* failed before the third fell due, and compounded with all, or most of their creditors. That before the money and notes were delivered, *Skidmore,* as assignee, &c. executed a discharge or release, to *Randolph & Savage,* and delivered to them the *book* of

account kept by *R. & D. K. A.* of all the goods, &c. which *release*, &c. was insisted on by *R. & S.* as a condition precedent to their paying the 4,000 dollars. The bill charged, that this discharge and release were obtained by the defendants *R. & S.* from *Skidmore*, by misrepresentation, coercion and fraud; that they could not avail themselves of it; and that *Skidmore* had no authority or power to give it, except upon a fair and full settlement of the account with *R. & S.*, &c. *Prayer*, that the defendants, *R. & S.*, may be decreed to come to an account with the plaintiffs, for the goods so delivered to them, or for the proceeds thereof, and to pay to the plaintiffs what should be found due to them, and that the defendant, *Skidmore*, account for the moneys he has received, and for general relief.

The defendants, *Randolph & Savage*, put in their *plea* and *answer*, on the 15th of *September*, 1820. They pleaded, after protesting, &c. that before the filing of the bill, &c. to wit, on the 7th of *April*, 1819, *Skidmore*, as assignee, &c. by his deed of release, in consideration of 4,000 dollars, released and discharged them from all demands in law or equity, by means of the said assignment, and prayed judgment, &c. The plea was silent as to the allegations of misrepresentation and fraud, but the same were fully denied and repelled in the answer.

*T. A. Emmet* and *Mc Coun*, for the defendants, in support of the *plea* and answer.

*J. Radcliff*, contra.

THE CHANCELLOR. The first objection to the plea is, that *Skidmore*, the assignee of *R. & D. K. Allen*, had no authority to compromise or compound with the defendants *Randolph & Savage*, as to the demand assigned to him. I do not perceive the force of this objection. *Skidmore* was not a mere agent to collect the debt of the *Allens*. The

1820.

ALLEN
v.
RANDOLPH.

bill states that they did, by an assignment delivered to *Skid-more*, " assign and make over to him their debt or demand in the bill stated, against *R. & S.*, and the proceeds of the goods delivered." This deed or writing passed their right and interest as creditors of *R. & S.* ; and the debtors had a right to treat with *Skidmore*, and deal with him as the real owner. The trusts raised by the assignment applied to the debt or proceeds which should come into his hands, and *R. & S.* had no concern with those trusts. They could not safely deal with any other person than the assignee of the demand ; any settlement they might make with him, if made in good faith, and not by fraud or collusion with him, was valid and binding. The release or discharge given by the assignee, upon the settlement, was one that he was competent to give, and they to receive. It discharged them from "all demands in law and equity by means of the assignment." It was, therefore, co-extensive with the debt and demand which passed by the assignment.

The only real difficulty in this case is, that there is no general averment in the plea denying the charges in the bill, which, if true, would avoid the plea. The bill charges that the release was procured by misrepresentation, coercion, and fraud, and though this charge is denied in the answer accompanying the plea, there is not even a general averment to that effect in the plea. The release is pleaded nakedly, as was the award in the two Exchequer cases of *Pope* v. *Bish* and *Edmundson* v. *Heartly.* (1 *Anst.* 59. 97.) But in the latter of those cases, the Court said, they did not mean to extend the authority of them beyond the case of awards. In *Lloyd* v. *Smith*, (1 *Anst.* 258.) afterwards, in the same Court, such a naked plea of a release charged by the bill to have been procured by fraud, was not allowed, in the first instance, but reserved to the hearing. In *Bayley* v. *Adams*, (6 *Vesey*, 586.) the authority of those cases was very much shaken ; and it seemed to be considered by Lord *Eldon* as the better rule, that

the charges in the bill must be met by way of general averment in the plea, as well as particularly in the answer. The rule is so laid down in *Mitf. Tr.* 216.; and the decision in *Davie* v. *Chester*, in Chancery, in 1780, is referred to, as containing a decision directly to the point. The sense of the rule is, that a plea must be perfect in itself, so that, if true in point of fact, there may be an end of the cause. But if the circumstances of fraud under which the release is charged to have been procured, be not denied in the plea, it may be true that such a release was given, and yet this may be of no effect.

I shall, therefore, as was done in the Exchequer cases, and as Lord *Eldon* consented to in *Bayley* v. *Adams*, allow the defendant to amend his plea; the amendment to be by inserting a general averment or denial of the facts charged in the bill, which go to show that the release was fraudulently or improperly procured. The amendment to be made in three weeks after service of a copy of this rule, and a copy served *gratis* on the solicitor for the plaintiff; and in default thereof, the plea to be deemed overruled, and with liberty to the plaintiffs to except to the answer of the defendant, *Randolph*, the survivor of *R. & S.*

As the cause was brought to a hearing, not only on the defect in the plea, but on the merits of the defence touching the competency of *Skidmore* to execute a release, I shall not grant costs upon this order, but reserve the question of costs to the conclusion of the cause.

1820.

ALLEN<br>v.<br>RANDOLPH.

Decree accordingly.

END OF THE CASES.