# KENT COUNTY.

SIMON H. GREENE *vs.* CALEB F. HARRIS *et al.* IN EQUITY.

To a bill in equity, to redeem a mortgage and obtain an alleged balance due, and containing certain averments of fraud or mistake made to meet an anticipated plea of accounts stated, three answers at different times were put in setting up in defence matter which might have been embodied in pleas. Subsequently a formal plea of *stated accounts* sworn to be true in point of fact as required by the rules in equity was filed.

*Held*, that this plea was defective in that it did not contain averments denying the charges of fraud or mistake made in the bill to anticipate the plea.

*Held, further*, that as three answers had been put in in different stages of the litigation, another should not be added to repeat former denials, but the complainant should have the same right to except as if the plea and the answers had been filed together.

Charges of fraud or mistake made in a bill in equity must in a plea of accounts stated be denied by proper averments in the plea.

A bill brought by G. against H. to redeem a mortgage and for a balance due, contained, in order to meet an anticipated plea of stated accounts, allegations that H. had agreed to pay certain prices, being one eighth of one cent per yard more than S. paid to Saunders; that H. named certain prices to G. as the Saunders prices, but the prices named being less than the Saunders prices, G. was led to make out the accounts rendered. A plea of stated accounts, being held defective for not negativing these allegations of the bill, was amended by the addition of an averment denying that H. ever agreed, or stated, that the prices named by him were, and should be, one eighth of one cent per yard more than Saunders was receiving, and also denying that he knew, until the bill was filed, what Saunders's prices were.

*Held*, that the plea thus amended was sufficient.

It is within the discretion of an equity court to allow a plea to be withdrawn and a new

one filed, or to allow a plea to be amended. And the amendment of a plea is not forbidden by Equity Rule 35 of the Supreme Court of Rhode Island.

A plea in equity must be complete so that issue may be taken on it.

A plea of stated accounts is not necessarily incomplete because it does not allege that the accounts have been examined and approved by the complainant, as the accounts may from other circumstances have acquired the weight of stated accounts.

If issue be taken on a plea in equity the only question is the truth of the plea. In case of argument on such issue, everything not denied by the plea is assumed to be true.

A plea in equity cannot be excepted to. The denials made by plea should therefore be also made by an accompanying answer, which can be excepted to.

A demurrer to a bill being sustained as to certain matters charged in the bill, a decree was asked for, specifying the parts of the bill to be struck out. The court, exercising its discretion, held that the portions subject to the sustained demurrer were too closely connected with other portions, from which the complainant claimed the right to infer relations of trust, &c., to be separated, and refused to make the decree.

To a bill to open and correct an account, the account itself, accompanied with proper averments denying the fraud or error charged, may be pleaded in bar.

Where matters of defence instead of being formally pleaded are contained in an answer, it is sufficient for the answer to contain such averments as would be required in a formal plea.

Bill in equity followed by plea and answer supporting it, and jury trial claimed—

*Held*, that the questions raised by the plea, and those only, were to be submitted as issues to the jury.

The rule that an answer overrules a plea applies only when the respondent makes answer to something which by his plea he denies his liability to answer.

All the answers filed in an equity suit constitute but one answer.

The rule that all the answers in a case will be considered as one answer is for the complainant's protection, and to preserve evidence of all statements the respondent may have made.

An equity court will not send to a jury indecisive or indifferent issues.

*Semble*, that where defences in equity are made by answer instead of by formal plea, there is no reason either on principle or precedent why courts should not deal with such defences as if formally pleaded.

*Semble*, that defences in equity made by answer instead of by formal plea are equivalent to a plea supported by an answer.

*Semble*, that an allegation which destroys complainant's title, whether made by plea or answer, must be decided before hearing the case at large.

BILL IN EQUITY to redeem a mortgage, and to secure a balance of account claimed to be due the complainant. The former proceedings in the case are reported in 9 R. I. 401, and in 10 R. I. 382.

After the decision reported in 10 R. I. 382, and the entry of the decree of July 15, 1873, 10 R. I. 393, the respondent Harris filed a formal plea of stated accounts, — the accounts being those alluded to in the opinion of the court, 9 R. I. 408, and in the plea being set forth at length. This plea was set down for argument by the complainant ; and the case came again before the court :

1st. On the sufficiency of the plea as filed.

2d. On a motion made by the complainant for a rehearing of so much of the decree of July 15, 1873, 10 R. I. 393, as sustains the demurrer to the charges of partnership and profits.

The opinions of the court state such further facts as are needed to make the opinions intelligible.

*Charles S. Bradley & Edwin Metcalf*, for the complainant, as to the sufficiency of the plea claimed.

I. All the charges in the bill of errors in the accounts, or of wrong in the transactions out of which the accounts arose, must be met by averments in the plea, and by an answer supporting the plea and denying the charges. See Story's Equity Pleadings, § 801; *Rocke* v. *Morgell*, 2 Sch. & Lef. 726, 727 ; *Goodrich* v. *Pendleton*, 3 Johns. Ch. 384 ; *Bogardus* v. *Trinity Church*, 4 Paige, 178.

II. The plea contains no denial of these charges in the bill, and no answer whatever is filed in support of the plea.

III. The only inquiry, therefore, is, whether the bill contains charges of error in the accounts, or charges of wrongful conduct, which, if true, would render invalid the plea of stated accounts as a bar to the relief asked in the bill.

The bill certainly charges the respondent with having violated his agreements with the complainant in those business transactions which the accounts set up in the plea purport to cover.

It also charges specifically that these accounts are erroneously made up, and are not in accordance with the agreements between the parties, and the prayer is for the correction of these errors specifically, as well as for general relief.

And on the motion for a rehearing they submitted the following points : —

The bill sets up agreements between the complainant and respondent, and the existence of certain relations between them, which entitle the complainant to an equitable share in the profits of the business carried on by them. It is immaterial whether such agreements amount to a partnership, or a guaranty, or not. The inquiry simply is, Whether those agreements and relations justify this claim of the complainant to any share of such profits ?

The opinion and decree upon the respondent's demurrer negative the right to claim relief as partner or on joint account. To this decision the complainant objects, and asks a reversal of that part of the decree, for these reasons : —

1. Such ground for sustaining the demurrer was not taken at the hearing by the respondent.

His printed brief, both in itself and in its references, entirely avoids any such point. The complainant presumes the court do not intend to render judgment upon questions not submitted by the parties in their briefs or arguments.

2. The agreement as stated in the bill,.and in the letter of the respondent embodied in it, is a contract giving the complainant some right, interest, or share in the proceeds or profits of the business. This statement in the bill is to be considered as if supplemented by all the evidence that might be offered in its support. And the inquiry upon demurrer is, Whether it is clear that under such circumstances no relief should be granted. See *Brooks* v. *Hewitt*, 3 Ves. Jun. 253.

The fact, that the amount or share of such interest is not mathematically stated, does not prevent a court, either of law or equity, from ascertaining it. A reasonable compensation is, as a matter of daily practice, ascertained by courts and juries.

A partnership may exist even when the respective shares are not fixed by agreement, but are left to future equitable adjustment.

The leading case on this point is *Peacock* v. *Peacock*, 2 Camp. 45; also in 16 Ves. Jun. 49, which has been frequently referred to, and always as sound law. See Dixon on Partnership, p. 95.

The only question in such a case is, whether the proportion of interest is to be in the same ratio as the number of the parties, or, whether it is dependent upon the particular circumstances of the case, and to be ascertained equitably by the court or jury.

The language in the case of *Peacock* v. *Peacock* was : " You shall have 15*s.* a week till October ; the books will then be made up, and you shall have a *share ;* we will not talk of the share till October comes ; we shall settle it then." Language certainly analogous to that in the present case.

*Thomas A. Jenckes & James Tillinghast*, for the respondent Harris.

*Providence, April* 6, 1874. POTTER, J. This suit was again heard before the full court on February 9 and 10.

The complainant has made a motion to be reheard on so much of the decree entered July 15, 1873, as sustains the demurrer as to partnership or interest in profits.

On full consideration we cannot find any agreement for any definite or indefinite share in the profits sufficiently alleged.

It is nowhere alleged that there was any agreement for any share or interest in profits in consequence of which the complainant contracted in the commencement to do the work, or that there was any such agreement at any time afterwards under which any portion of the work was done.

The respondent has filed a regular formal plea of stated accounts, with the oath thereto required by the rules, that the matters therein alleged are true in point of fact.

The complainant's counsel object to this plea that it is defective in this : that it does not deny the fraud and errors charged in the bill, and therefore is not a complete plea, and that it is not supported by an answer.

When the bill was filed, the respondent, instead of resorting to formal pleas, set forth all his defences by answer. He distinctly set up the defence of stated accounts (among others), and claimed the same benefit as if pleaded ; and in other parts of his answer he fully denied the charges of fraud and error which were made in anticipation of and in order to meet his plea.

It was formerly held that the plea (if a formal plea) must be complete in itself, and must in itself by proper averments deny the charges of fraud, &c., introduced in the bill to meet and avoid it.

But since all defences are allowed to be made by answer, there seems to be very little of precedent or settled practice to guide us. We find but few cases where question has arisen about defences made wholly by answer.

But there is no reason on principle, or from analogy of decided cases, why the court should not deal with such defences substantially in the same manner as if made by a formal plea. Although not in form it may in effect be equivalent to a plea supported by an answer.

When Lord Eldon's commission in 1826 — in order to remedy the mischiefs growing out of the technicalities and conflicting decisions in the old system — recommended the allowing all defences to be made by answer, while they allow that the proposed change is not free from difficulty, they go on to say that no injury can arise to the plaintiff if care be taken that such an

answer be *treated as a plea*, with respect to its bearing on the subsequent stages of the cause.

In the case of *Gunn* v. *Prior* (referred to in *Dolder* v. *Lord Huntingfield*, 11 Ves. Jun. 291), a person claimed as heir. A plea of not heir was disallowed. An answer was then put in insisting that complainant was not heir. Lord Kenyon, M. R., sitting for Lord Thurlow, held that if he was not heir he was not entitled to discovery, and that this was a preliminary fact to be ascertained, and he directed an issue to try it. That an allegation of a fact which destroyed plaintiff's title, whether made by plea or answer, must be first decided.

Such seems the reasonable course. It is the object of all systems of pleading to endeavor to make the issues of law and fact as distinct as possible; and that all points of law, or matters which might be a complete bar to the further prosecution of the suit, should be decided before going into the case at large; and it is obvious that if the complainant was restricted to the old mode of excepting to an answer, it would in many cases cause great delay and expense.

And in the present case the court, with the assent of counsel, took the same course with the defences set up as if they had been formally pleaded and set down for argument.

The court decided on the validity of these defences. The same objection was then made that the portion of the answer which alleged stated accounts as a defence, and claimed the benefit of it as if pleaded, did not deny the charges of fraud and error made in the bill. But the court held, that the plea being part of an answer, which answer did contain averments denying the fraud and errors, was to be construed in connection with those denials.

The question was stated in the opinion to be, " Is the defence of stated accounts set up in the answer, and in connection with the aforesaid negative averments, sufficient ? " And the conclusion the court arrived at, and the decision made, was, that " this plea therefore (connected with the aforesaid averments) must be sustained."

And the decision in effect was that the defence was a good defence, unless the complainant sustained the charges he had made in his bill in anticipation of it, and the decree was intended to carry out this decision.

After this decision the complainant filed a long amendment to his bill, and the respondent filled a demurrer to certain parts of the bill, namely allegations of partnership or joint interest, alleged contract to pay certain prices, withdrawal of goods before contract completed; and as to the prayer to open the accounts, on three grounds, multifariousness, statute of limitations, and that no case for relief was stated. And he also filed an answer: 1st. As to so much of the bill as alleges that the accounts rendered were not intended as final statements, and claiming to correct them according to an alleged agreement; he denied that any demand had been made for payment, but alleged that the interest had been regularly carried into the accounts and payments made, and that complainant kept the mill insured for a large amount payable to complainant, and that H. L. Greene's accounts were all carried into these accounts. 2d. As to the residue of said bill, alleging stated accounts, averring that they are just and true, and claiming the same benefit as if pleaded.

On this being decided sustaining the demurrer on one point made, the bill was amended so as to assert distinctly Harris's knowledge of the Saunders prices, which Greene alleges he agreed to pay, and to the bill so amended the respondent filed a demurrer and answer substantially like the last ones referred to.

Although both these last answers have been spoken of as pleas supported by answers, they are not strictly so, but are merely answers setting up in defence matter which might have been pleaded. See Beames's Pleas, New York edition, 1824, p. 53, end of cap. 1 ; Story's Eq. Plead. § 695 ; Willis's Pleadings (Law Library, vol. 35), *556–8, *567–70.

The last demurrer having been decided, the respondent Harris, on the 29th November, 1873, filed a formal plea to specified parts of the bill, which was heard by the full court on February 9 and 10, 1874. There is no accompanying answer, but the plea has the oath required by our equity rules, that it is true in point of fact.

The complainant objects, as we have before stated, that the plea is defective: 1st. Because it does not contain averments to negative the charges which are made in the bill to meet the anticipated defence.

While in an anonymous case, 3 Atk. 70, case 24, A. D. 1743

(which, so far as can be gathered from the report, was a case of alleged mistake), it seems to. have been held by Lord Hardwicke that it would have made the plea in that case complete if it had alleged that the accounts were "*just and true*," and that that averment would have been sufficient to meet the charge of error; and while in *Bayley* v. *Adams*, 6 Ves. Jun. 586, Lord Eldon doubted, it seems now to be considered as settled, that charges of fraud or mistake must not only be denied by the answer in support, but must be denied by proper averments in the plea itself, and that a mere averment that the accounts are *just and true* may not be enough. Story's Equity Plead. § 802; Adams's Equity, *338–340; Jeremy's Mitford, 259, 260; *Phelps* v. *Sproule*, 1 Myl. & K. 231; *Ferguson* v. *O'Hara*, Pet. C. C. 493; *Allen* v. *Randolph*, 4 Johns. Ch. 693. See *Rocke* v. *Morgell*, 2 Sch. & Lef. 721–727; and in *Bogardus* v. *Trinity Church*, 4 Paige, 178–194, Chancellor Walworth said it was strange Lord Eldon had ever entertained any doubts on this subject, and gave his reasons for his decisions in that case.

The reason given for this rule is that the plea must be complete in itself, so that issue may be taken on it; and that everything not denied in it is to be taken as trūe; Wigram, § 260, p. 186; Mitford, *243; 1 Daniel Chanc. Prac. 637, 639; *Fisk* v. *Miller*, 5 Paige, 26, 29; and that in case of a plea and answer in support of it, the answer is no part of the defence. 1 Daniel Chanc. Prac. 647, 707; *Rhode Island* v. *Massachusetts*, 14 Pet. 210, 271; Wellford, 389; Wigram, 1st Amer. ed. § 261, p. 187; Jeremy's Mitford, *244. If the complainant replies, the only question is the truth of the plea; and if set down for argument, everything which it does not deny is for the argument to be taken as true; therefore, in a case like this, it would not be safe for the complainant to reply, as he would thereby admit its sufficiency, if true.

The plea now in controversy does not conform to the rules established by these authorities, and must therefore be overruled unless amended.

A second objection is made that the plea is not supported by an answer.

The bill prays for an account and for the balance found due to be paid by whichever party shall be found in debt to the other,

and for the mortgage to be cancelled. The plea is only to certain specified portions of the bill.

If the plea was a good plea, would any answer in support of it be necessary in the present state of the pleadings?

All the defences heretofore made have been by answer; and three different answers have been put in.

To determine whether an answer in support of the plea now offered is necessary, we must consider the reason why it is necessary in any case. And one reason given is because a plea cannot be excepted to; Wigram, 1st Amer. ed. § 262, p. 189; *Ferguson* v. *O'Hara*, Pet. C. C. 493; Beames's Elements, pp. 34, 35; Willis's Pleadings, 250, note E.; and therefore the respondent is required to deny the fraud or mistake by answer, which, if insufficient, may be excepted to. Wigram (§ 261, p. 189) considers it an arbitrary rule, established for the sake of convenience; but it is established.

But it is also settled that all the answers filed in a suit constitute but one answer; Mitford, *318; *Allfrey* v. *Allfrey*, 14 Beav. 235; 2 Daniel Ch. Prac. *909; Story, § 868; Adams's Eq. *347; and this has been carried so far as to hold that what has been once alleged must not be repeated. Adams's Eq. *343, n., *347; *Allfrey* v. *Allfrey*, 14 Beav. 235; *Bowen* v. *Idley*, 6 Paige, 46; *Trust & Insurance Co.* v. *Jenkins*, 8 Paige, 590. And this not only on the ground of avoiding useless repetition, but as adding to the cost, which latter reason is not of so much force in our practice as in England.

Three answers having been put in in the different stages of this suit, another should not be put in merely to repeat former denials. And if the complainant thinks that they do not contain enough to support the plea, we think he ought to have the right now to except in the same manner as if this plea and those answers had all been put in at the commencement of the suit; *i. e.* if he would have had the right then, which we do not now decide.

After the foregoing opinion the respondent Harris, by permission of the court, granted June 29, 1874, amended his plea by adding an averment that he never agreed nor stated that the prices named by him were and should be one eighth of one

cent per yard more than Saunders received, and also that he did not know until the bill of complaint was filed what Saunders's prices were. This amendment was filed July 2, 1874. Harris, in addition to this, on July 11, 1874, by permission of the court, also granted June 29th, filed an answer to those parts of the bill as amended, to which the demurrer was not sustained. 10 R. I. 393. This answer contained a plea of stated accounts, and of the statute of limitations as to all causes of action which accrued more than six years prior, respectively, to the filing of the bill and of its several amendments.

The plea as amended was set down for argument.

*Charles S. Bradley & Edwin Metcalf*, for the complainant and against the sufficiency of the plea.

The bill, as amended, seeks to correct the accounts exchanged between the parties, for reasons set forth in the bill.

1. The plea sets up those accounts which the bill is brought to correct, as a bar to the bill.

It does not set up any fact outside the bill as a plea of stated accounts should do. It is therefore a bad plea. Mitford (6th ed.), 301 *et seq.*; Story (7th ed.), § 798 *et seq.*; Daniels (4th ed.), 665 *et seq.*

2. It does not, even as amended, meet all the allegations of the bill, which are relied upon to open the accounts.

This the law requires. See opinion of court above, and cases cited.

*a.* It does not deny the allegation of trust and confidence between the parties, or the agreements for mutual benefit from the business.

*b.* Nor the allegation that Harris represented that the proposed changes in price were essential to enable him to make a profit, and the alleged untruth of those representations.

*c.* Nor that he told complainant that he knew before the change what Saunders's prices were, nor that complainant did not know what Saunders's prices were till after the completion of the business.

*d.* Nor the allegation that the accounts were not intended to be final accounts.

*e.* Nor that the prices upon which the accounts are made up were less than the prices paid Saunders as charged in the bill.

*f.* Nor the charges of respondent's silence, and acquiescence in the claims made by complainant for correction of accounts.

*g.* Nor the great profits made by the respondent, and that complainant made nothing therefrom.

The averments in the plea are the only ones in issue when it is replied to. Hence the necessity that it put in issue every material allegation in the bill.

*Thomas A. Jenckes & James Tillinghast,* for the respondent Harris, *contra,* stated the history of the case and relied on the points and authorities submitted by them to the court at previous hearings.   9 R. I. 402 ; 10 R. I. 383.

*Providence, July* 17, 1875.   POTTER, J.   To Greene's bill to redeem, and claiming that on a fair settlement there would be a balance due him, Harris put in a plea of stated accounts.   To meet this anticipated plea, Greene had in his bill alleged that Harris had agreed to pay for the work certain prices, being one eighth of one cent per yard more than was paid by Slater to Saunders ; and that Harris named to Greene certain prices as these prices, but which were less, and thus Greene was led to render the accounts at the prices he did, — Harris contending, on the other hand, that the agreement was to do the work for the prices named, and had no reference whatever to the prices paid to Saunders.

On argument it was held (April 6, 1874), that the plea was insufficient, inasmuch as it did not contain averments negativing these allegations in the bill.

Harris has amended his plea by adding an averment, denying that he ever agreed, or stated, that the prices named by him were, and should be, one eighth of one cent per yard more than Saunders was receiving, and also denying that he knew, until the bill was filed, what Saunders's prices were.

This plea was set down for argument, and the parties were heard at Providence, June 12, 1875. Is it sufficient ? We think it is.

The object of the plea is to reduce the matters in dispute to definite issues. The parties differ as to what the contract was. The bill alleges the contract as claimed by the complainant, and admitting the rendering of accounts, asks to correct them. The respondent pleads stated accounts rendered upon the contract as

he claims it was, and denies the contract and mistake or fraud alleged in the bill.

The respondent must of course make out his defence, and show that the accounts he pleads come up to the description of stated accounts. The allegation of a different contract, and that the accounts were rendered by mistake or fraud, is in the nature of a replication, and the burden to prove them is on the complainant. The respondent, by denying them, merely puts them in issue. Story Eq. Pl. § 676; Lubé Eq. Pl. p. 251 (2d Amer. ed. N. Y. 1846). The complainant objects that the plea is bad and insufficient, because : —

1. It sets up no fact outside of the bill. A plea of this nature is an anomalous plea, and cannot well set up anything not in the bill, the bill having in fact anticipated the defence. Story Eq. Pl. §§ 651, 667, 676, 802; Lubé Eq. Pl. pp. 246–9; Judge McLean in *R. I.* v. *Mass.* 14 Pet. 210, 269; Adams's Equity, *338.

2. That it does not deny certain other allegations in the bill, viz. : —

*a.* The allegations of trust and confidence, and the agreement for mutual benefit. These seem to us to be rather matters to be offered in evidence as having some bearing, more or less, on the question whether any such contract was made than as matter for independent issues.

*b.* The allegation that Harris told Greene that the prices he named were necessary to enable him to make a profit.

*d.* That the accounts rendered were not intended as final. In pleading the accounts, as stated, it is implied that they were final.

*e.* That the prices Harris named were less than the Saunders prices. The same remark applies to these allegations. If the contract is proved as alleged by Greene, it will then become important to ascertain what these Saunders prices were.

*f.* Harris's acquiescence in Greene's alleged claim that the accounts were not made out as they should be. This, also, is involved in the question of their being stated accounts, and in the question of whether the contract is proved as alleged by him.

*g.* That Harris made a great profit, and Greene nothing. If a contract is proved to pay certain prices, this is immaterial.

As a general remark, these objections relate to matters which

might properly be offered in evidence as affecting the probability whether a contract was ever made as alleged by Greene; and whether, if made, it was changed or waived; and whether the accounts rendered can properly be considered as stated accounts.

Human nature constitutes a part of the evidence in every case. We more easily believe that a person has done what we should have expected under the circumstances ; and we require a greater degree of evidence to satisfy us that a person has done something which would be unnatural or improbable. So these facts, if they are facts, may be the basis of argument in favor of the complainant's allegations.

And our impression is that these allegations are denied in the answer, which is the proper place for denial of all matters of detail tending, if true, to prove the main issue made in the plea.

*c.* The complainant also objects to the plea that it contains no averment denying that Harris told Greene that- he, Harris, knew the Saunders prices. Harris does in his plea deny that he knew the Saunders prices until the bill was filed.

It will be recollected that in the beginning of this suit the bill was considered by the court, and so argued by counsel for complainant, as intending to charge fraud in inducing the contract.

On this view the allegation that Harris knew the Saunders prices was material and necessary to constitute fraud on the part of Harris, as otherwise it would be mere mistake.

On this view the court decided, on a former hearing, that the knowledge on the part of Harris must be alleged positively, and not merely by way of stating that he had admitted it to some person.

Subsequently (February 15, 1873), the court decided that they would thereafter consider the bill as founded on contract to pay certain prices, and that in consequence of the representations of the defendant the accounts were made up on a basis different from the prices contracted for. And thus the bill now stands. *Order allowing plea entered July* 26, 1875.

After the foregoing opinion the respondent Harris asked for

a decree amending and supplementing the decree of July 15, 1873, 10 R. I. 393, and specifying the portions of the bill eliminated by that decree.

*George H. Browne & James Tillinghast,* for the respondent Harris, and in support of the motion.

*Charles S. Bradley & Edwin Metcalf, contra.*

*Providence, March* 31, 1876.   POTTER, J.   In this case, on a demurrer to the bill, the court, by a decree entered at the March Term for the County of Kent, A. D. 1873, 10 R. I. 382, 393, sustained the demurrer so far only as it related to any claim for profits or joint interest, and the respondent now moves for a decree supplemental to and explanatory of that decree, specifying the portions of the bill eliminated from and stricken out of said bill by said former decree.

The allegation in the bill as to promises of profits and joint interest are so mixed up with the general narrative of facts from which the complainant claims the right to draw certain inferences as to the mutual relations of the contracting parties, — relations as he expresses it of trust and confidence, throwing more or less light upon the subsequent agreement, that we do not see how they can very well be separated.

The complainant has a right to allege such facts and grounds of complaint as he considers will support his claim to relief ; and while the court adheres to its former decision that certain grounds for relief, which the complainant thinks he has stated, are not sufficiently stated, we doubt the propriety of eliminating any particular passages from the bill.

In the course of the argument on the present motion, it is intimated in one of the printed briefs that several previous decisions of the court made in this case are erroneous.

*First.* It is said, referring, we suppose, to the decision of April 6, A. D. 1874, that contrary to the practice in equity the court has allowed an amendment of a plea where an answer has been filed, and reference is made to Daniel Ch. Pr. 4th ed. 703, which cites only one case, *Thompson* v. *Wild,* 5 Madd. 82.

If the person who prepared the brief had looked beyond his text-book, he would have discovered that the case cited does not go the length stated in the text; and that there are numerous

cases where, when a plea has been supported or accompanied by an answer, the plea, and sometimes both, have been allowed to be amended.

In the case cited, *Thompson* v. *Wild*, 5 Madd. 82, a plea of release was supported by an answer. Leave had been given to amend the plea; and besides amending the plea the sworn answer was also altered in some *material* passages. Sir John Leach[1] observed that there was so much inconvenience in allowing any alteration in an answer that he should not, as a *general rule*, in future give leave to amend a plea supported by an answer. He overruled the plea, but let it stand for an answer.

Sir John Leach himself afterwards, in *Watkins* v. *Stone*, 2 Sim. & Stu. 560, where a plea was accompanied with an answer, allowed the respondent to withdraw the plea and file a new one.

In *Davies* v. *Davies*, 2 Keen, 534, which was a plea of settled accounts, accompanied by an answer to the excepted parts, denying the fraud, Lord Langdale allowed the plea to be amended.

In *Phelps* v. *Sproule*, 1 Myl. & K. 231, 237, was a plea of settled accounts and release, supported by an answer. The chancellor allowed the plea to be amended. The plea lacked the averments denying the collusion charged in the bill.

In *Bayley* v. *Adams*, 6 Ves. Jun. 586, 598, 599, which was so thoroughly discussed, where a plea was supported by an answer, Lord Eldon gave leave to amend the plea, or both plea and answer, as counsel might choose.

In *Allen et al.* v. *Randolph et als.* 4 Johns. Ch. 693, a release was pleaded without averments denying the fraud charged in the bill. The plea was accompanied by an answer supporting the plea and denying the fraud. Chancellor Kent allowed it to be amended.

In *Leaycraft* v. *Dempsey*, 4 Paige, 124, there was a plea of stated account, with an answer. Chancellor Walworth held the plea defective, but said it would be of course to amend it; but ordered it to stand for an answer, and declared it a good defence if proved. The decree was subsequently confirmed by the Court of Appeals, 15 Wend. 83, but no question was raised in the appellate court upon this point.

---

[1] Campbell's Lives of the Chancellors, 16mo ed. vol. 10, 235; London Law Mag. vol. 12, 427.

In *Foley* v. *Hill*, 3 Myl. & C. 475, 483, was a plea supported by an answer denying part of the charges. Lord Cottenham held the answer not sufficient, but said if respondent's counsel could effect their object by amending, he might permit it. But he thought it could not be done in that case.

In *Portarlington* v. *Soulby*, 6 Sim. 356, was a plea supported by an answer. The vice-chancellor overruled the plea, but allowed the respondent to plead *de novo*, and the respondent put in both plea and answer anew. When these came on, the vice-chancellor again overruled the plea, but let it stand for an answer, with liberty to except.

In *Meeker* v. *Marsh, Executor*, 1 Saxt. 198, was a plea of stated account supported by an answer. The Court of Chancery of New Jersey allowed both to be amended. The bill prayed for an account and to set aside a stated account and a receipt given upon it.

These cases ought to be sufficient. Two general principles may be traced through all the cases : *a.* To use great caution in allowing amendments of a sworn answer or other pleading; *b.* To consider whether the plea was so defective in substance that an amendment would be of no use ; and even in such cases leave has often been given to withdraw the plea and file a new one.

But, subject to these considerations, courts of equity have always exercised the right to allow amendments of pleas in all cases.

*Second.* The counsel ask in their brief for a precedent where, to a bill to open and correct an account, the account itself has been pleaded in bar.

With proper averments of course it may be, and in this case the court allowed the averments to be added.

Pleas of stated account (where the bill seeks to open and correct) are regulated by the same principles which regulate all similar anomalous pleas.

To a bill to impeach a decree for fraud the decree itself is pleaded.

To a bill to set aside an award the award is pleaded. So to a bill alleging circumstances to take an account out of the statute of limitations the statute is pleaded. So as to a release. In *Pusey* v. *Desbouvrie*, 3 P. Wms. 315, A. D. 1734, to a bill alleg-

ing that though a release had been given, there was property not covered by the release, and asking for an account, the respondent pleaded the release. The complainant objected that the release could not be pleaded in bar, as the very object of the bill was to set it aside. Lord Talbot replied that it was every day's practice.

The books are full of cases of bills filed to open settled accounts for either fraud or error, in which the account itself is pleaded in bar with proper averments. The principle is the same in regard to accounts stated, but not actually settled.

In *Knight* v. *Bampfeild et als.* 1 Vern. 179, A. D. 1683, before Lord Keeper Guilford, the bill claimed relief against a stated account as not fairly stated, alleging that by collusion more had been allowed than was really due. The stated account was pleaded.

In *Willis* v. *Jernegan*, 2 Atk. 251, to a bill to set aside an agreement and to open an account, a stated account was pleaded.

In *De Montmorency* v. *Devereux*, 1 Dr. & Wal. 119, 127, to a bill to set aside a deed so far as it confirmed a former deed, and operated as a release, the deed was pleaded in bar. (Same case in 2 Dr. & Wal. 410.)

The doctrine as to pleas of account stated is so recognized and laid down by Chancellor Walworth in *Weed* v. *Smull et als.* 7 Paige, 573. It is difficult to see how it could be otherwise without changing the whole system regulating what are called anomalous pleas or pleas not pure. The bill claims an account, and, instead of reserving it for a replication, charges that the respondent sets up a pretended stated or settled account as an excuse for not accounting, and then goes on to allege circumstances of fraud or error as reasons why this pretended bar should be set aside or not avail him. The respondent has in most cases no other defence, except to rely in his plea on the stated account, and to deny the fraud or error charged as Sir John Leach says in *Cork* v. *Wilcock*, 5 Madd. 328, 330: "Where the plaintiff in equity seeks to avoid a legal bar upon equitable grounds, there the defendant in equity pleading the legal bar must of necessity accompany his plea with averments generally denying the equitable matter; for otherwise there would be no fact to be tried upon his plea, because the bill admits the legal bar." See also *Foley* v. *Hill*, 3 Myl. & C. 475, 480, 483.

And that even in cases where the defence is made by formal plea supported by answer, and not by answer alone, the plea itself should contain these averments, has only been settled in comparatively modern times.

If the bill is for an account generally, the respondent may then plead a stated or settled account or release, and the complainant may indeed dispute the fact, but he cannot ask to set it aside for error or fraud without amending his bill and specifying the particular errors. *Weed* v. *Smull et als.* 7 Paige, 573; *Dawson* v. *Dawson*, 1 West, Temp. Hardwicke, 171; also in 1 Atk. 1; *Sumner* v. *Thorpe*, 2 Atk. 1. See also *Taylor* v. *Hayling*, 1 Cox, 435; and *Knight* v. *Bampfeild et als.* 1 Vern. 179.

*Third.* The brief states that the respondent had submitted "stated accounts without allegations denying the charges in the bill. The court held them to be necessary, but by a *confessed novelty* in equity pleading considered the denials of the answer as part of the plea."

This is a criticism on the decision of July 16, 1870, 9 R. I. 401, 408. If the statement of facts in the brief was correct, the decision would have been a novelty in equity pleading as it has been settled in modern times. But there was no plea in the case. The defence set up in the answer was for convenience' sake spoken of by both the court and counsel as a plea, and in order to settle the legal questions before going into evidence was argued as such; but it was really an answer; and it was on this ground that the decision in 9 R. I. 408 was based. The counsel did not then, nor do they now, refer to any authority on the point. It was merely, as the court thought, a common sense application of old principles to a new case.

A plea must be complete in itself, because that generally makes the issue to be tried. In case of an answer, the replication is to the whole answer, and not to any special defence set up in it; and if issues are needed for the jury the court must frame them, taking both bill and answer into consideration.

If the counsel had desired a reargument or reconsideration of either of those questions, it would no doubt have been cheerfully granted; and that, if asked for in time, would have been the better course. *Motion denied.*

A jury trial of the questions of fact in this case was under the Rhode Island statute claimed by the complainant, and the case came before the court on the form of the issues to be sent to the jury.

*Charles S. Bradley & Edwin Metcalf,* for the complainant, submitted the following issues : —

1. Whether relations of trust and confidence existed between the complainant Greene and the respondent Harris at the time of the execution of said mortgage, and before and during the time when the work was undertaken and performed by said Greene for said Harris as set forth in the complainant's bill, and when the accounts thereof were made up and rendered to said Harris ?

2. Whether said Harris assured said Greene before the execution of said mortgage, and as an inducement for the execution of the same, that if Harris made profit in the business, Greene should also, and that such profit should be reasonably apportioned between them ?

3. Whether a partnership relation existed between said Greene and Harris in the business of printing and selling calicoes ?

4. Whether said business was carried on upon joint account ?

5. Whether a contract was entered into between said Greene and Harris January 1, 1859, for printing to be done by said Greene for said Harris at a price of one eighth of one cent a yard over and above the prices and compensation paid and given by Samuel Slater & Sons, a business firm of Providence, to James Saunders of Warwick, a calico printer, for printing done by said Saunders for said Slater & Sons ?

6. Whether said Harris represented to said Greene, or to the respondent, Henry L. Greene, that the prices stated in the bill of complaint were the compensation fixed and agreed upon for the period beginning January 1, 1859, and ending July 1, 1859 ?

7. Whether said agreement continued in regard to the prices subsequently fixed for printing done between July 1, 1859, and July 18, 1860 ?

8. Whether said agreement continued in regard to the prices subsequently fixed for printing done between July 18, 1860, and December 1, 1862 ?

9. Whether said Harris represented that such prices were so fixed for said several periods, because such a scale of prices was required to enable him to make any profit from said business?

10. Whether said Harris made a large fortune from the business so carried on, and said Greene made no profit therefrom?

11. Whether said Harris claimed and exercised the right to fix the prices at which said printing should be done in the first instance, subject to an apportionment of profits thereafter to be made?

12. Whether said Greene relied upon the truth of said Harris's representations as to the prices and compensation received by said Saunders from said Slater & Sons, and upon the assurance given by said Harris in regard to the mode in which the profits of said business were to be apportioned in printing said goods and in rendering his accounts thereof?

13. Whether said Greene relied upon the truth of said Harris's representations in making the said contracts for printing?

14. Whether said Greene relied upon said Harris's representations as to the necessity of such prices to enable said Harris to make any profits from said business?

15. Whether said Harris knew what were the prices and compensation received by said Saunders from said Slater & Sons, when he made the representations aforesaid respecting the same, and whether he did not subsequently admit to said Greene that he did at the time of making such representations know what such prices and compensation were?

16. Whether the prices fixed by said Harris, and allowed to said Greene, were one eighth of one cent a yard more than the prices and compensation received by said Saunders from said Slater & Sons for similar work?

17. Whether the prices named by said Harris and actually charged by said Greene in his accounts of such printing, were not much less than the prices and compensation received by said Saunders from said Slater & Sons for similar work? And whether the difference did not amount to a loss to said Greene of upwards of one hundred thousand dollars?

18. Whether said Harris removed from said Greene's works print cloths which said Greene was entitled to print under his contract aforesaid with said Harris, and what, if any, loss did said Greene sustain by such removal of unprinted cloth?

And, in support of these issues, claimed that the elementary principle of law applicable to the determination of the issues in this cause has been so often affirmed in the decisions of the court in this case, and so recently repeated in the remarks of Judge Potter, that its statement only will be sufficient.

That is, a complainant who brings his bill to set aside a settled or stated account is entitled to. have an issue upon the facts alleged by him as the grounds in equity for the decree which he asks. The only inquiry in the case, therefore, is : What allegations essential in law has the complainant made in the case ?

The court has further said that they deem the answer the proper place in which to deny the details of the bill.

A trial of the issues tendered by the complainant in his bill cannot be avoided by the respondent, either by a plea or an answer. If he does not deny them in one or the other form, he admits them. We have stated quite fully the history and the facts of the case in our last brief upon the motion to strike out portions of the bill. And to that we refer, and to the decision upon that motion, so far as the same bear upon this motion. Indeed a motion to strike out portions of the bill is but the same, so far as it goes, as the present attempt of the respondent to deprive us of a trial upon the allegations in the bill.

The inquiry then is chiefly one of fact. The complainant has the right to make such allegations as he deems to be true. Upon him is the responsibility for these allegations. No power exists in his opponent to avoid a trial of them, except by admission. The court even has not the right to deny him a trial before a jury as to the truth of the facts alleged.

*George H. Browne, Charles Hart & James Tillinghast,* for the respondent Harris urged the following objections to the form of the issues submitted by the complainant.

I. The only matters now in issue are the matters distinctly averred in the plea. 1 Dan. Chan. Pr. (edition of 1871) 695, and note 4; *Hughes* v. *Blake,* 6 Wheat. 472; *Rhode Island* v. *Mass.* 14 Peters, 257; *Fish* v. *Miller,* 5 Paige, 29.

II. All of the issues proposed by the complainant, except 5, 6, 7, 8, and the first part of 15, utterly ignore this principle.

Further —

a. They attempt to make independent issues of matters which either are now entirely immaterial, or at the most may or may not become matters of evidence. See opinion of July 17, 1875, given above.

b. Issues 2, 3, 4, are plainly *coram non judice*. They entirely ignore the decree of July 15, 1873, upon the demurrer, by which the portions of the bill upon which these issues could alone rest have been eliminated, and attempt in this irregular manner to obtain what upon direct application has been already once for all refused, viz.: a rehearing upon that demurrer. See opinion of April 6, 1874, given above.

As to these portions of the bill that decree was final, and the time for reëxamining them, even upon, formal petition or bill of review, has long since passed. There can be no pretence, therefore, that the matter of these issues is now open in the cause.

c. Issues 16, 17, are mere matters of account and computation. If they can ever become material at all, they are certainly not proper issues *now* under this plea, and (as may be said, indeed, of all of these issues) can only tend to confuse. Issue 17, too, besides being double, is entirely inconsequential; if answered in the affirmative, it furnishes no definite information by which to change the accounts.

d. Issue 18 has not anything even in the bill itself to sustain it. There is no averment anywhere that Harris was under any obligation to furnish any particular quantity of goods to be printed. The only averment is on page 8, that the goods were *intended* to be printed.

III. Issues 5, 6, 7, 8, and the first part of 15 (for the latter part is mere matter of evidence, if anything), are the only issues proposed by the complainant that at all refer to the matters of the plea. But they are improper in form; they do not conform either to the bill or to the plea; and the following are submitted as the only proper admissible issues under the bill and plea as they now stand.

And in behalf of the respondent they submitted the following issues : —

1. Were the accounts and the letters in reference thereto, copies of which are annexed to said respondent Harris's plea, rendered and exchanged from time to time between said complainant

Greene and said respondent Harris, as stated in said plea and in said copies annexed thereto?

2. Did said Harris, on the first day of January, 1859, agree that the prices he would thereafter pay to said complainant Greene for printing should be one eighth of one cent a yard more than the prices and compensation paid and given by said Samuel Slater & Sons to said James Saunders for printing like styles?

3. Did said Harris, on said first day of January, 1859, know what prices and compensation said Slater & Sons were paying and giving to said Saunders for printing like styles?

Issues 2 and 3 being repeated for the dates of July 1, 1859, and July 18, 1860.

*Providence, November* 11, 1876. PER CURIAM. The complainant and respondent have each presented forms of issues for the jury trial which has been claimed.

In the present stage of the case, the plea makes the issue to be tried: and the forms proposed by the respondent present the questions raised by the plea, and those only, and must therefore be adopted.

The complainant proposes several questions which may be important as affecting the main issue, by way of evidence; or which may possibly become important in some subsequent stage of the case; but which cannot now be proposed to the jury, as the issues must be confined to the plea. *Order accordingly.*

The case again came before the court on a motion made by the complainant for a rehearing of the order fixing the issues, and of the order allowing the respondent's plea, as amended and filed July 2, 1874.

*Charles S. Bradley & Edwin Metcalf*, for the complainant.

*George H. Browne, Charles Hart & James Tillinghast*, for the respondent Harris.

*Providence, July* 21, 1877. POTTER, J. This is a motion for rehearing of the order settling the issues in this case, and also of the former orders allowing the respondent's plea.

The complainant claims that the court erred in allowing the respondent to file a second plea, and that this is contrary to practice. We have before referred to instances where courts of chancery have allowed pleas to be withdrawn and new ones filed,

or the plea to be amended. The bill in this case has been twice amended, and once at great length.

The case of *McKewan* v. *Sanderson*, L. R. 16 Eq. 316, cited by the complainant, merely decides that when a plea is overruled, a second plea cannot be put in without special leave. See also *Jackson* v. *Ward*, 18 W. R. 973.

It is further claimed that an amendment of the plea was allowed " without any motion from the respondent, or any hearing from either party."

February 9 and 10, 1874, a hearing was had upon the sufficiency of the original plea, and after the opinion of the court, delivered April 6th, Harris filed his motion for leave to amend, specifying the amendments, and an order was entered in Providence, June 29, 1874, allowing the respondent to amend the plea, and to file an answer to such parts of the amended bill as to which the respondent's demurrer had been overruled. This order, with the motion and amendments, was filed in Kent County, July 3. The plea, as amended, was set down by the complainant for hearing, and was heard upon its sufficiency before the full court, at Providence, June 12, on printed briefs and full oral arguments (present Messrs. Bradley & Tillinghast, &c.). Neither the printed brief nor the minutes of the court contain any intimation that the complainant's counsel objected to the amendments as improperly made; and after the opinion of the court, July 17, 1875, an order was entered July 26, sustaining the plea as amended, and the complainant filed his replication the same day.

It is claimed that the plea was incomplete, because it does not allege in the language of some of the precedents that the accounts had been examined and approved by the complainant.

It is not necessary, in order to give to the accounts the weight and quality of stated accounts, that they should have been examined and approved ; where they have been, it is of course proper so to plead. There are many circumstances to be considered, such as length of time, acquiescence, and the fact that the party has acted upon them to his injury. See cases formerly cited, and 4 Robinson's Practice, 569.

And besides it makes some odds which side renders the accounts. In this case it is Greene who seeks to reopen and sur-

charge the accounts. The accounts were rendered by, and not to him.

It is claimed, that however the precedents may be, our rules (Equity Rule 35) do not allow of amending a plea.

While the rule does not provide for amending a plea as a matter of right, it would be contrary to all the principles of equity practice to consider it as preventing the court from allowing an amendment in cases where the justice of the case requires it, and it may be presumed the court would not allow it in any other case.

Says Mr. Chief Justice Taney, in *Rhode Island* v. *Massachusetts*, 14 Pet. 210, 257, " The Court of Chancery has always exercised an equitable discretion as to its rules of pleading, whenever it has been necessary to do so for the purposes of justice."

The 49th New York Chancery Rule provided, that if a plea be overruled no other plea should be received. But it was laid down that this did not prevent the court from allowing another plea on special grounds. 1 Hoffman Chancery Practice, 226. So, also, in the English Chancery. *Rowley* v. *Eccles*, 1 Sim. & Stu. 511.

In *In re Lyons*, 1 Dr. & Wal. 327, 333, Lord Chancellor Plunkett said : " Rules ought to be enforced against a party who undertakes to act in opposition to them without an application to the court in the first instance. Yet there is no ground for saying, nor can it be pretended that these rules, the creatures of the court, are to become its masters, by assuming a nature so binding as to overrule and control the acts of that very court which gave them existence."

And in *Dicas* v. *Lord Brougham*, 6 C. & P. 249, which was a suit against Lord Brougham in consequence of an order made by him in a case in chancery, Lord Lyndhurst, C. B., said that the Chancellor had the authority to make an order in a particular case altering the practice.

So, also, in *Burrell* v. *Nicholson*, 6 Sim. 212, Shadwell, Vice-Chancellor, said : " The orders of the court are to be considered as laying down general rules, but not as being so imperative that they can under no circumstances be departed from ; " and also Lord Chancellor Cottenham, in *Smith* v. *Webster*, 3 Myl. & C. 244. And the ordinances of Lord Bacon, A. D. 1618 (No. 44),

evidently contemplate the making of an order upon the special nature of the case against the general rules whenever necessary.

It is also argued that as the court has held that all the answers make one answer, they do make a full and complete answer, and make the identical defence made by the plea, and so overrule the plea.

The rule, that the answer overrules the plea, applies only where the respondent answers ˙to something which, by his plea, he says he ought not to be obliged to answer.

In the present case the plea is to relief only, and after the respondent had answered fully, including in his answer the defence of stated accounts as if pleaded, the complainant filed a very long amendment to his bill, and thereupon the respondent was, by an order of court, allowed to plead as to a new bill.  He did so.

Thè rule that the former answer cannot be withdrawn, but will all be considered together as one answer, is a rule made in the interest of justice to protect the complainant, and to preserve for his use the evidence of any statements or admissions which the respondent may at any time have made.

If the amendments were immaterial, they should not have been made.  If material, the order allowing the respondent to plead anew was a proper one.

Counsel again contend that to a bill to set aside an account, the account itself cannot be pleaded.

It might be sufficient to refer to the authority of Story's Eq. Pl. Redfield's ed. § 802.

The case cited by the complainant from Freeman Ch. c. 62, is qualified and explained by Beames, Elements of Pleas, &c., 231.  It is said in Freeman, if the bill " setteth forth that there was an account and that there was a mistake, and setteth forth the particular mistake, there an account stated is no good plea." In one sense this is true, but it is calculated to mislead.  Such a plea purely, and with nothing more, would not meet the case. It must, also, answer the allegation of mistake.  But if it means, that stated accounts with proper averments do not make a good plea in such a case, then it is not now law.

Gilbert (Forum Romanum, 56) says : " The third peremptory plea is the stated account; and if fraud be objected to such an account and to the stating of it, and all the circumstances of

fraud be answered and denied, such stated account may be pleaded, for that is not an ' *exceptio ejusdem rei*,' " &c. ; and Beames, 236 : " A plea of stated account is good, although the bill charges fraud or error as ground for opening it." We have referred to these as authorities, although we consider the principle as sound independently of them.

The cases of *Knight* v. *Bampfield et als*. 1 Vern. 179, and *Willis* v. *Jernegan*, 2 Atk. 251, are in point as showing the practice. Stated accounts there pleaded were not objected to. And the language of Mitford, *259, is in substance of the same purport. The principle, that to a bill to impeach a stated account the account may, with proper denials, be pleaded, is stated by Lord Hardwicke in *Hankey* v. *Simpson*, 3 Atk. 303, and is recognized by Chancellor Walworth in *Weed* v. *Smull et als*. 7 Paige, 573, 575, although it was not the point in the case. A very good reason why the point has not been decided is, because it is so consistent with the principles on which all anomalous pleas are founded that no one has ever presumed to dispute it.

The reference to *De Montmorency* v. *Devereux*, 1 Dr. & Wal. 119, in the opinion delivered March 31, 1876, was a mistake, there being in that case an answer and no plea.

But it is further claimed by the counsel for the complainant that such a plea does not apply to a case like the present where the accounts are set up, not as a. bar to discovery and relief, but as *a part of the transaction itself* sought to be impeached. And Dr. Langdell's new work on Equity Pleading is quoted as thus stating the case of *Roche* v. *Morgell*, 2 Sch. & Lef. 721 : " The primary object of the bill [in that case] .was to set aside certain conveyances of property to the respondent, as having been obtained by fraud, and the release pleaded appeared on its face to have been a part of the transactions charged to be fraudulent. If the conveyances were voidable for fraud, therefore, the release as pleaded did not render them valid ; and it seems that the plea was bad as being *exceptio ejusdem rei cujus petitur dissolutio*." [1]

This often cited case was a bill for discovery and relief charging fraud in certain accounts delivered, and to set aside a certain conveyance as fraudulent, and that it might be decreed to stand as security only. The respondent pleaded to the discovery and

---

[1] Langdell, Summary Eq. Pl. § 111, p. 73.

relief a subsequent statement and settlement of accounts between the parties, and a release voluntarily and freely, and without undue practice, executed by the complainant. The bill had not stated the release and prayed to set aside that also. Lord Redesdale held that the plea of release could be no bar to discovery, for upon that very discovery would depend its validity; but if it had been pleaded to the relief only, it might have been with proper averments a good plea, if supported by an answer. 2 Sch. & Lef. 726, 727.

This statement of the case shows how much weight is due to the claim that it establishes the general principle contended for; certainly not a very intelligible one.

We come now to two points which the counsel for the complainant have argued with a great deal of zeal and ability, not only at this but at the former hearing.

The first is, that the plea and the issues as settled do not present to the jury the question of *trust and confidence*, which is considered by the complainant as of great importance to his side of the case.

As we have before observed, there is here no relation of attorney, agent, trustee, &c., no relation implying a duty where the party would be prevented from dealing with the property at all, or if he did, the burden would be on him to show that all was entirely honest and free from suspicion.

Suppose the issue made and found for the complainant. It would not enable the court to set aside a verdict found for the respondent upon the contract as claimed by the respondent, nor would it necessarily be inconsistent with it.

Having before stated our view of its admissibility and effect as evidence, it is not necessary to repeat it.

Another point argued relates to the allegation of promises of mutual benefit from the business. We give what we believe to be the substance of these allegations.

And the subsequent reductions, while alleged to have been made by Harris for the reason that he could not otherwise make any profit, are alleged to have been made subject to the same understanding and agreement.

The bill alleges certain relations between Greene in printing, and Harris in selling goods, commencing in 1841, sometimes on

joint account, and sometimes at fixed prices; that (Amendment A) in April, 1854, new arrangements were made, Harris to sell, and Greene to print, for prices fixed by Harris, and subject to the condition that if either was making a loss and became dissatisfied, he should be entitled to a revision of the prices or subsequent allowances and corrections, so as to give him a fair share of the profits of the whole business. And in December, 1854, Harris wrote to Greene the letter quoted in the brief: "If I make money you will also," said Harris (Amendment C). Harris proposed to guarantee to G. a certain rent for the mills, if his profits on the prices as fixed did not amount to such rent. These guaranties continued until April 1, 1857, after which Greene continued to make, and Harris to sell, without any guaranty or allowance, until January, 1859, when Harris agreed that the prices thereafter allowed should be one eighth of a cent. per yard over the price and compensation paid by Slaters to Saunders, "subject furthermore to the general arrangement and understanding hereinbefore set forth in relation to their mode of doing business together."

So far as this can be considered as a claim for partnership or joint profits, we have heretofore expressed our opinion fully upon it; and so far as it can be considered as alleging a promise that the contract should be beneficial to the complainant, we consider it too indefinite to form the subject of an issue, even if it was not liable to the objection that no such issue is made by the plea.

The replication should have been withdrawn, or leave asked to do it, before or at the time of filing the present motion. But the opinion we have given renders any further discussion of this point unnecessary. Mitford's Eq. Plead., by Tyler, Appendix, 435; *Hughes* v. *Blake*, 6 Wheat. 453, 472, 473; *Rhode Island* v. *Massachusetts*, 14 Pet. 210.        *Motion denied.*

After the foregoing opinion was delivered the complainant called the attention of the court to the fact that the amended plea was filed before the last answer of the respondent Harris was filed, the dates being respectively July 2, 1874, and July 11, 1874, and claimed that the answer, being subsequent to the

plea, overruled it. Thereupon the court gave the following opinion : —

*East Greenwich, August* 27, 1877. POTTER, J. In this case our attention has been again called by the counsel for the complainant to certain portions of his brief, and some authorities which they suppose we may have overlooked, and although an order has been entered, we have still thought best to consider them again.

The respondent had made the defence of stated accounts by answer, and subsequently after bill amended put in a formal plea to that effect. If it had been intended to object to this, the proper time was when the order was made allowing it.

But if the objection grows out of the fact that after the amended plea was filed, July 2d, the respondent, on July 11th, filed an answer containing certain statements more or less relating to the same defence, it may be well to consider it.

The respondent, who to a bill of the character of the present bill, alleging that the complainant anticipates that a certain defence is to be made, and setting up his grounds for avoiding or setting it aside if made, sets up by plea the defence so anticipated, is required not only to deny in his plea the fraud or the matter set up by way of avoidance but also to file an answer containing in substance 'the same denials.

The reasons for this we have before stated. By an established rule, a plea cannot be excepted to. And the complainant therefore is entitled to have the same denials made by answer in order that he may except to them.

Has the respondent done anything more than this in his answer ?

It might have been sufficient, in making the necessary denials, to have mentioned the accounts by referring to the plea, but we cannot see any objection to the form adopted.

Has the respondent in his answer given any discovery or answered any matter which by his plea he objects to answering ? In this case the plea would be so far overruled. He was obliged to make the denials. We cannot see that he has done anything more.

The complainant is entitled, notwithstanding the plea, to a discovery and answer as to everything which might be of use in

deciding on the plea, and as to everything which, if true, would displace the plea. Story Eq. Plead. §§ 684, 686, 687.

It is not every answer which overrules the plea, but only answering what the respondent has objected to answering. Wigram on Discovery, § 219 ; Gilbert, Forum Rom. 58. A defendant may demur to the relief, and yet give all the discovery. Wigram, 2d ed. p. 151. While it must be allowed that especially in the early cases, before many points of practice were settled, there were many decisions of which it is difficult from the report of them to see the reasons, the tendency of the courts lately, both in rules and decisions, has been to do away· with mere technicalities, and to enable the parties to separate out the real matters in dispute and present them for decision as soon as possible.

And nothing is gained to either party by overruling the plea. When that has been done, the benefit of it has generally been saved to the respondent at the hearing, or it has stood for an answer. Even in a case (*Cooth* v. *Jackson*, 6 Ves. Jun. 12, 17) where a respondent made one defence by his plea and another by answer, Lord Loughborough, while overruling the plea, ordered it to stand for an answer.

We have said in a previous opinion that even where the defence is entirely by answer, if the court can see that the decision of any particular point may end the case, they might and would require the parties to take up and settle that in the first place before going into the case at large.

And where the defence is by answer, if the court are required to frame issues for the jury, they must be guided by substantially the same rules as have guided them in the present case. They must, as we have done here, distinguish between what are disputed matters of fact proper for issues, and other matters which, though having a bearing on the case as evidence, yet are not proper for issues, because they would decide nothing if found for either side.

We see no reason for reconsidering our former opinion.

Subsequently, by agreement between the parties, the case was submitted to referees under a rule of the court.